# EXHIBIT B

UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLUMBIA

* * * * * * * * * * * * * * * * )
UNITED STATES OF AMERICA,            )       Criminal Action
                                     )       No. 20-00127
                Plaintiff,           )
                                     )
   vs.                               )
                                     )
CHANCE BARROW,                       )       Washington, DC
                                     )       June 24, 2021
                Defendant.           )       8:42 a.m.
                                     )       (MORNING SESSION)
* * * * * * * * * * * * * * * * )


TRANSCRIPT OF JURY TRIAL
BEFORE THE HONORABLE COLLEEN KOLLAR-KOTELLY,
UNITED STATES DISTRICT JUDGE


APPEARANCES:

FOR THE GOVERNMENT:        ELIZABETH A. ALOI, ESQ.
                           AMANDA R. VAUGHN, ESQ.
                           UNITED STATES ATTORNEY'S OFFICE
                             FOR THE DISTRICT OF COLUMBIA
                           555 Fourth Street, NW
                           Eleventh Floor
                           Washington, DC 20530


FOR THE DEFENDANT:         EUGENE OHM, ESQ.
                           OFFICE OF THE FEDERAL PUBLIC
                             DEFENDER
                           625 Indiana Avenue, NW
                           Suite 550
                           Washington, DC 20004


REPORTED BY:               LISA EDWARDS, RDR, CRR
                           Official Court Reporter
                           United States District Court for the
                             District of Columbia
                           333 Constitution Avenue, NW
                           Room 6706
                           Washington, DC 20001
                           (202) 354-3269

I N D E X

The Court's Charge to the Jury                    Page 13

Question from the Jury                            Page 61

                                                 Page 65

THE COURT: This is the United States versus Chance Barrow, 20-CR-127.

Counsel, would you identify yourselves for the record.

MS. ALOI: Good morning. Liz Aloi and Amanda Vaughn for the United States.

THE COURT: Good morning.

MR. OHM: Eugene Ohm on behalf of Mr. Barrow. Good morning, your Honor.

THE COURT: Good morning.

A couple things: I brought you in early because it dawned on me there were a couple of instructions to go over.

I have left the instruction relating for them to no longer consider the national security clearance.

THE COURTROOM DEPUTY: (Connecting public telephone line.)

THE COURT: We'll wait until after we start the instructions to do that, Dorothy. I want to get moving.

I realize, Mr. Ohm, you had insufficient evidence there. They didn't give any reason, and they're not required to. So I'm not going to have them speculate as to why that got dropped out. The point is, it's no longer there. I want to make sure they're not looking for this or thinking about it.

The other one is the defense theory, which I had done a short one. You objected, so I did a longer one.

And the problem with what you had proposed -- and I worked from the second one -- for the defense theory, frankly, your defense theory is insufficient evidence. There isn't identification or entrapment or something that we would put something in. There isn't any particular additional evidence you're focusing on. What you're focusing on is really that the Government didn't prove their case.

It's a defense theory as an instruction. It's not argument. The way you wrote it is like it's argument. I read it, and it's an instruction. So it needs to be put in the language of an instruction.

So what I've done is started off with what you said, which was that he's not guilty -- asserts he's not guilty, and your theory that there's insufficient evidence to prove beyond a reasonable doubt each of the required elements.

The specific language is what you focused on in your version with some annotations and things in there, which is argument and not something the Court would give. So you can take a look at it. It's either nothing or this.

So I'll let you take a look at it in terms of doing it. But it picks up all of the things that you

focused on specifically. Just put it in instruction language.

MR. OHM: Your Honor, it's certainly preferable to the one that the Court sent out yesterday. It's our position that the first defense -- the theory-of-the-defense instruction with facts is the most appropriate one. But we'll accept this over nothing.

THE COURT: As I said, what you wrote was more like an argument. So I'm not giving that.

The next thing --

MR. OHM: Your Honor, some judges, I know, also deal with that problem by just saying "the defense contends" in the beginning.

THE COURT: Well, I have it as "it asserts." But it still is -- the way you presented it, it still is more casual in terms of not being an instruction. It is part of the instructions, so that's why I'm giving it this way.

In terms of exhibits, there will be a signed sheet that you need to sign to indicate what's going back. I want to clarify for the record that the NCIS notes are going to be 13-A. They were not admitted. But I want to make sure on the record that that's what they are.

The email with Trevor Nelson -- the email with the Trevor Nelson chain is 13. These are defense exhibits. They wound up as both being 13. So I'm making a distinction

between 13 and 13-A. 13-A, which is the NCIS notes, didn't get admitted. So they're not going to get that.

There will be a sign-in sheet before the exhibits are sent back to the jury for you to look at them and make sure you agree this is what got admitted and is going back there.

Electronically, if you have them set up electronically with nothing else on them in terms of their only being the things that are admitted -- so they're copies of the exhibits -- we can consider if people look at it and send it back because they've got big screens. Otherwise, they're looking at paper, which has to be passed around. So it's something you may want to consider.

We should talk to John Cramer, Dorothy, when we're finished with the instructions for him to help us as to how it can be shown. Because if somebody back there -- we've got a clean laptop. They can just show it and everybody can look at them. But it should be only the exhibits that were admitted.

My understanding is that you all just had a laptop with nothing else on it. But I could be wrong. That's usually what they do. Yes? No?

MS. ALOI: Yes.

THE COURT: I'll let you confer, both sides, with John Cramer when he comes as to what's to be sent back.

Obviously, you will have paper copies, but that doesn't get easily sent around for everybody to take a look at it, because they've got big screens. It's a courtroom just like this.

Ms. Aloi, did you want to say something?

MS. ALOI: No. We're all squared away.

THE COURT: So I'm assuming the same thing, Ms. McElvein, that you've got the same thing in terms of your exhibits that can be done electronically without too much trouble?

MS. McELVEIN: Yes. I can certainly do that without too much trouble.

THE COURT: We'll just double-check with Mr. Cramer so nothing goes back that creates a problem at a later point. But, anyway, they've got big screens like we have here. It's exactly the same setup. And so it's just easier for all of them to take a look at documents that are at issue.

You should know that their lunches are at 12:30, because that's what the kitchen does.

As I understand it, they're doing -- what are they doing? They're bringing up sandwiches? Dorothy, what's happening with them? They're not doing any lunch?

THE COURTROOM DEPUTY: Everybody just buys their own lunch. The marshal takes them downstairs all together.

THE COURT: Oh, they go down. That's what I was asking.

So I can tell them correctly, just tell me, what happens at lunch?

THE COURTROOM DEPUTY: The CSO will come up and get them, take them downstairs for them to get their lunch and bring it back up.

THE COURT: I wasn't sure what they were going to do.

At the end of this, we'll have a discussion as well as to where counsel is going to be while we have them deliberating.

I would stay in the courthouse, at least initially. If we're going to get notes, we tend to get them at the beginning. If you're going to be out of the courthouse, we need to have a cell phone or some way to know where you are. You can't be too far. We only call one person for each side.

Mr. Barrow, you should stay with your lawyer so we're not trying to find you as well.

THE DEFENDANT: Yes, your Honor.

THE COURT: The break is at 12:30. And they come back roughly -- they'll be finished with their lunch around 1:30. If you're going to go someplace during that period of time, check in with the courtroom to make sure they haven't

sent us -- they tend to send notes or verdicts just before lunch or right after lunch. So if we're not able to get you and you're off someplace, it sort of delays the matter.

So I don't know where you're going to hang out, the courthouse, or if you're going someplace else. Anyway, just be prepared to let us know at the end.

I think that's it. Let me just look at one other thing.

There will be a CSO that will be out of the courtroom. They have to communicate with us with notes.

They will get two copies of the verdict form. They'll send a note back when they reach a unanimous verdict with the verdict form. They keep one; we get one. We bring them out, ask them -- the foreperson to stand.

So we need to have the foreperson have a hand mic to be able to do the verdict when we get it, Dorothy.

THE COURTROOM DEPUTY: Okay.

THE COURT: And then if there's a poll, we'll have to hand it around to each of the jurors, assuming that's what happens.

Let me see what else there is.

I'm going to say all of this again so they will not have missed anything.

Do we have all the jurors?

THE COURTROOM DEPUTY: No.

THE COURT: Any other aspects of this, Dorothy, we need to go over, since it's not our usual jury room?

THE COURTROOM DEPUTY: No.

THE COURT: Now we can get the line in the overflow courtroom set up.

THE COURTROOM DEPUTY: (Connects public telephone line.)

THE COURT: You'll see we did a table of contents so they can find things more easily in terms of the pages.

MR. OHM: Your Honor, for the one about the national security, for the revocation of national security clearance issue, is that in here?

THE COURT: Yes.

MR. OHM: What page is it on?

THE COURT: Hold on.

It's Page 21.

MR. OHM: Okay. Thank you.

THE COURT: Is the phone working?

THE COURTROOM DEPUTY: Yes.

THE COURT: Is the overflow courtroom working or not?

THE COURTROOM DEPUTY: Yes. It should be.

MR. OHM: Your Honor, just so the Court knows, we don't have an extra flash drive, but we're trying to get somebody from the office to run one over. So we'll have

Do they need some assistance with the electronic stuff going in there, into the other courtroom, do you think, Dorothy?

THE COURTROOM DEPUTY: I don't know, Judge. I need to find out who's the foreperson, if they know how to use the equipment. I haven't had time to do any of this yet.

THE COURT: That's fine. That's why I'm suggesting we get help.

(Thereupon a recess was taken, after which the following proceedings were had:)

THE COURT: We received a jury note. It was just shortly before they went to lunch. So I figured the easier thing to do was to come back at 1:15. Their lunch is 12:30 to 1:30 and that way everybody could get lunch, including them.

So the note reads: "As it relates to Count 1 only, please clarify what evidence refers to 'supplementary materials'?

"Is it only the USAJobs application and the documents uploaded (SF 50, résumé, et cetera) or does it include the TIGTA portion that was completed and submitted as well?"

Now, the Government has sent something back that indicates that this is a factual issue for the jury and they

should be making the decision.

I frankly somewhat disagree. The indictment indicates in it precisely what the supplemental materials are. It's the résumé, the SF 15, which is the veterans' preference and the SF 50. It did not include the TIGTA portion.

So I'm not sure what documents they're asking to look at. If it's fairly clear-cut from the indictment what they are, I don't see any reason not to tell them as opposed to them trying to figure out which documents are there.

Mr. Ohm? Do you agree with me or them?

MR. OHM: I agree with you, your Honor.

THE COURT: So would you agree it doesn't include TIGTA?

MR. OHM: Yes. I think it's pretty clear that it doesn't.

THE COURT: Government?

MS. ALOI: Your Honor, that's fine.

THE COURT: That's fine?

MS. ALOI: Yes.

THE COURT: So the note that will go back will be something like: In response to your jury note as to Count 1 regarding which documents are involved in the referenced, quote, "supplemental materials," it is the SF 50, résumé, et cetera. I'll just put it the way they've done it and not

the TIGTA portion.

Do we need to say anything else?

MS. ALOI: Not from the Government's perspective.

THE COURT: Does that work?

MR. OHM: I'm sorry. Did the Court say it was going to delineate the materials?

THE COURT: I'm sorry?

MR. OHM: Did the Court say it was going to delineate the materials?

THE COURT: I'm just going to follow their language. So to which documents are included in the referenced supplemental materials, it is the SF 50, résumé, et cetera.

So I've used it the way they've described it and not -- it does not include the TIGTA portion that was completed and submitted as well. So I'm just using their language.

MR. OHM: That's fine. I guess part of me says, is "et cetera" only the SF 15?

THE COURT: As far as I know, it's only the SF 15, according to the indictment. That's what I went back and looked at.

MR. OHM: Right.

THE COURT: Was the veterans' preference put in? I can't remember. Was that part of it? I know there was

some discussion, but I don't know --

MR. OHM: I believe we put the whole application packet in.

MS. ALOI: It was not in the Government's exhibits, but Mr. Ohm supplemented it.

THE COURT: Did it include that as well?

MR. OHM: Yes.

THE COURT: So it should be the SF 50, résumé and SF 15?

MR. OHM: Yes.

THE COURT: We might as well have them look at the right thing.

So it's not the TIGTA portion completed and submitted as well, using their language.

We're going to type it quickly and then print it out if we can. If we can't, we'll just go back to chambers and do it.

THE COURTROOM DEPUTY: (Tenders document to counsel.)

THE COURT: So that's the printed copy that's going to go back. I'll sign it. Just so you have it for the record.

So it uses their language in terms of doing it. Is that all right?

MR. OHM: Yes, your Honor.

THE COURT: Government?

MS. ALOI: Yes. This is fine.

THE COURT: Okay. What I would suggest is you not go too far away just in case we get another note back afterwards. Or if you're going to stay in the courthouse but don't want to sit here forever, just let us know where you'll be. There are tables out in the atrium if you want to sit there.

MS. ALOI: Yes, your Honor.

MS. VAUGHN: Thank you, your Honor.

(Thereupon a recess was taken, after which the following proceedings were had:)

THE COURT: I told you we'd get another note.

Let me read this one into the record:

"For Count 1, as part of 'job application,' are we to consider Questions 1 through 17 from Pages 1 to 3 of Government's Exhibit No. 3?"

I have looked at Government's Exhibit No. 3, which is the application. We can either say something like "Nothing's excluded" or that they should consider the whole document. I wouldn't get anything more specific than that, unless we excluded something.

MS. ALOI: Your Honor, Mr. Ohm and I don't agree on much, but I think we agree the answer to this question is yes.

MR. OHM:  That's true.

THE COURT:  Okay.  Then we'll send it back short and sweet.

MS. ALOI:  Your Honor, it might be worth also pointing the jury to the wire fraud instruction that you gave.  I fear there might be some confusion because of the box that was cut and pasted from the indictment into the instruction, maybe inadvertently suggesting they need to find something about every particular document listed instead of the requirement as set forth in your instructions, that they simply need to find that the wire moved interstate.  It seems like the way in which the box was cut and pasted from the indictment may be generating some confusion.

THE COURT:  Well, what we could do is just simply suggest that they should read the full instruction on wire fraud or something like that.  I don't know.

MR. OHM:  Your Honor, as I was telling Mr. Barrow, I think it's entirely speculative.  We have no idea what they're thinking or what they're doing.  We do know, though, they know how to ask a question.

THE COURT:  Right.

MR. OHM:  So I would just say that the appropriate answer right now is "yes," and they'll ask if they need more.

THE COURT: I think they're just making sure that they're looking at the right documents.

So the note would say, "Dear Jurors: In response to the juror note from your foreperson regarding the 'job application,' the answer is Yes," capitalized, "as to your question, 'Are we to consider Questions 1 through 17 from Pages 1 to 3 of Government's Exhibit 3?'"

Is that acceptable? So it picks up with their language.

MR. OHM: Yes, your Honor.

MS. ALOI: Could we take a look? Are we drafting something? Could we take a look at it? Ms. Vaughn is coming.

THE COURT: Look at what?

MS. ALOI: Are you putting it on paper as you did the last time?

THE COURT: Yes. I'm typing it out, signing it and it goes back. I'll show it to you. It's the same format as we did with the last note.

MS. ALOI: Okay.

THE COURT: I just wanted to type it out.

(Thereupon, Ms. Vaughn entered the courtroom and the following proceedings were had:)

THE COURT: We'll send it to Dorothy and we'll print it out in the courtroom like we did last time and

you'll get a copy of it.  I just didn't want to print it if you had a different issue about it.

THE LAW CLERK:  Dorothy, I just sent it to you.

THE COURT:  If you could print it out like we did last time.

THE COURTROOM DEPUTY:  (Tenders document to counsel.)

THE COURT:  Look it over and see if that's okay.  Then we'll send the answer back.

MR. OHM:  That's okay from our perspective.

MS. ALOI:  That's fine.  Thank you.

THE COURT:  All right.  I wouldn't go too far.

(Thereupon a recess was taken, after which the following proceedings were had:)

(Morning session concluded.)

## CERTIFICATE

I, LISA EDWARDS, RDR, CRR, do hereby certify that the foregoing constitutes a true and accurate transcript of my stenographic notes, and is a full, true, and complete transcript of the proceedings produced to the best of my ability.

Dated this 24th day of June, 2021.

/s/ Lisa Edwards, RDR, CRR
Official Court Reporter
United States District Court for the
  District of Columbia
333 Constitution Avenue, NW, Room 6706
Washington, DC 20001
(202) 354-3269